**Affirmed and Memorandum Opinion filed May 1, 2020.**



In The

# Fourteenth Court of Appeals

## NO. 14-18-00983-CR

**AJA CRAWFORD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 3**
**Fort Bend County, Texas**
**Trial Court Cause No. 15-CCR-183616**

## M E M O R A N D U M   O P I N I O N

Appellant Aja Crawford appeals a judgment of conviction for the misdemeanor offense of false report to a peace officer. In a single issue, appellant challenges the legal sufficiency of the evidence supporting her conviction. Viewing

the evidence in the light most favorable to the verdict,[1] we conclude that the evidence is legally sufficient, and we affirm the trial court's judgment.

## Background

Appellant and Bryan Abercrombie have a daughter. At the time of the charged offense, their ten-year-old daughter lived in Fort Bend County with Abercrombie. Appellant resided in Dallas. Appellant purchased a cell phone for the daughter's use. As a disciplinary measure for the daughter's misbehavior at school, Abercrombie took away the phone temporarily and returned it within a "couple" of weeks.

Approximately two months later, appellant contacted the Fort Bend County Sheriff's Office ("FBCSO") to report that the phone had been stolen. The FBCSO dispatcher told Sergeant Dustin Medlin that "someone was calling from Dallas and wanted to report their ex-husband had stolen her phone." Sergeant Medlin contacted appellant, who told him that her child's father, Abercrombie, had taken away a cell phone from their daughter and refused to return it. According to Sergeant Medlin, appellant "stated that she believed that [Abercrombie] had whipped the child to get the password for the cell phone and used the cell phone to purport himself as her and send out emails to her attorney." Appellant's report resulted in theft charges filed against Abercrombie. The district attorney ultimately dismissed the charges due to insufficient evidence.

Abercrombie contacted the FBCSO, complaining that appellant was harassing him. According to Abercrombie, appellant was responsible for numerous false charges against him, including the theft charge discussed above, none of which

---

[1] *See Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979))

resulted in a conviction. Investigating Abercrombie's complaint, FBCSO Detective William Worsham learned that appellant had filed numerous reports of wrongdoing against Abercrombie, all of which were dismissed. Detective Worsham also discovered that appellant repeatedly called the FBCSO for welfare checks on her daughter. Based on his investigation, Detective Worsham submitted harassment charges to the Fort Bend County District Attorney's Office, but the District Attorney's Office instead charged appellant with the misdemeanor offense of false report to a peace officer. *See* Tex. Penal Code § 37.08.

At appellant's bench trial, Sergeant Medlin, Abercrombie, and Detective Worsham testified to the above-described facts. Appellant also testified. She stated that Abercrombie took the phone from their daughter after an altercation. According to appellant, she asked for the phone via the "Family Wizard," through which she communicates with Abercrombie. Appellant testified that she obtained a family court order for Abercrombie to return the phone to the daughter, but he refused. Appellant agreed that she had no objection to Abercrombie taking the phone from their daughter as a disciplinary measure; she just wanted him to return the phone to her. Appellant acknowledged that she spoke to the FBCSO, but she denied that she told anyone Abercrombie had stolen the phone. She explained that she contacted the FBCSO because she wanted to "document" what had happened. She also testified that she had called the police "numerous times" because Abercrombie assaulted her during their relationship, but she also stated that Abercrombie had not been convicted of assault.

After hearing the evidence and argument of counsel, the trial court found appellant guilty as charged in the information. The trial court sentenced appellant to 180 days in jail and a $750 fine, but the judge suspended the sentence and placed appellant on community supervision for eighteen months. This appeal followed.

3

**Analysis**

Appellant contends that the evidence is insufficient to sustain a conviction for false report to a peace officer. When reviewing the sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict and determine whether a rational factfinder could have found the elements of the offense beyond a reasonable doubt. *See Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)); *Espino-Cruz v. State*, 586 S.W.3d 538, 542 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd). Although we consider all evidence presented at trial, we do not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the factfinder. *Id.* at 543 (citing *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)). A factfinder may accept one version of the facts and reject another, and the factfinder may accept or reject any part of a witness's testimony. *Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018). We defer to the factfinder's resolution of conflicts in the evidence, weighing of the testimony, and drawing of reasonable inferences from basic facts to ultimate facts. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

A person commits the offense of false report to a peace officer if, with intent to deceive, she knowingly makes a false statement to an officer that is material to a criminal investigation. *See* Tex. Penal Code § 37.08(a). Appellant contends that the evidence is legally insufficient to support her conviction because: (1) she did not make a false statement to Sergeant Medlin; and (2) she did not make the report with the intent to deceive. We disagree.

First, appellant asserts that she did not make a false statement to Sergeant Medlin because, at the time she made the report, Abercrombie had not returned the phone to her daughter. As noted above, however, Abercrombie took the phone from

4

his daughter in mid-December 2014. Abercrombie testified that he returned the phone about a "couple" of weeks later. Yet appellant did not make the report to the FBCSO until early February 2015. Accepting Abercrombie's version of events, the trial court, as the factfinder, reasonably could have believed that, at the time that appellant made the report in February 2015, Abercrombie already had returned the phone to the daughter. Thus, the trial court could have found beyond a reasonable doubt that appellant's report that Abercrombie had taken the phone and refused to return it was false. *See, e.g.*, *Gear*, 340 S.W.3d at 746 (evidence is legally sufficient if rational juror could have found elements of offense beyond a reasonable doubt); *see also Febus*, 542 S.W.3d at 672 (factfinder may accept or reject any part of a witness's testimony); *Issasi*, 330 S.W.3d at 638 (appellate court defers to factfinder's resolution of conflicts in evidence).

Appellant emphasizes that Abercrombie acknowledged that he did not return the cell phone until after he received a phone call from the FBCSO about the phone. She urges that this fact necessarily means that Abercrombie did not return the phone until after she made her report to Sergeant Medlin, and thus, her statement was not false. However, nothing in our record indicates that the phone call to which appellant refers resulted from her report to Sergeant Medlin. Abercrombie acknowledged talking to someone from the FBCSO about the phone and then returning the phone after the conversation, but the record is silent regarding to whom Abercrombie spoke. That conversation could have resulted from other contact appellant had with the FBCSO. For example, appellant testified that, after she heard a mid-December 2014 altercation between appellant and her daughter, she contacted the FBCSO to request a welfare check on her daughter. Indeed, Abercrombie explained that he received "a couple phone calls from sheriffs or detectives about this particular cell phone" and that his daughter "already ha[d] her cell phone back,

5

but [appellant] still somehow was able to file a theft charge." Regardless, Abercrombie testified consistently that he returned the phone to his daughter within a couple of weeks after taking it. The trial court, as the factfinder, was entitled to believe that Abercrombie had returned the cell phone to the daughter at the time that appellant made her report to Sergeant Medlin in February 2015.

Appellant next contends that she did not make the report with the intent to deceive because she never stated that appellant had committed theft and simply made the report for documentary purposes. Generally, the State relies on circumstantial evidence to prove the requisite mental state. *Wood v. State*, 577 S.W.2d 477, 480 (Tex. Crim. App. [Panel Op.] 1978); *Frost v. State*, 2 S.W.3d 625, 630 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) ("Proof of the defendant's mental state must, by necessity, almost always depend upon circumstantial evidence."); *see also Bell v. State*, No. 04-02-00756-CR, 2004 WL 484555, at *3-4 (Tex. App.—San Antonio Mar. 12, 2004, no pet.) (mem. op., not designated for publication) (explaining that factfinder may base its intent determination "on the defendant's conduct and surrounding circumstances").

Here, sufficient evidence exists from which the trial court, as the factfinder, reasonably could infer the requisite intent to deceive. For example, Abercrombie testified that he believed appellant made false statements to law enforcement authorities to gain leverage in their ongoing custody dispute. *Cf. Frost*, 2 S.W.3d at 630 (explaining that appellant's motive to humiliate the complainant was important factor in determining that legally sufficient evidence supported his conviction for false report to a police officer). Both appellant and Abercrombie discussed the acrimonious nature of their relationship, including that they were unable to communicate directly and instead communicated through the "Family Wizard." Moreover, the trial court heard evidence that appellant previously made numerous

6

false accusations against Abercrombie. Some of those accusations, such as an alleged assault, resulted in criminal charges filed against Abercrombie. Abercrombie also testified that appellant falsely accused him of abusing their daughter. None of these accusations resulted in a conviction or deferred adjudication. This history between appellant and Abercrombie provides important context to the timing of appellant's February 2015 report given that she did not contact the sheriff's office regarding the alleged theft until almost two months had passed after Abercrombie took the phone away. Such a delay, the trial court could have concluded, lends credibility to Abercrombie's contention that appellant's report had a deceptive motive. Based on this evidence, the trial court reasonably could have inferred the requisite intent to deceive. *E.g.*, *Washington v. State*, 127 S.W.3d 111, 116 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (explaining that factfinder was entitled to infer requisite intent to deceive in false report case where appellant twice made false report to police officers); *Frost*, 2 S.W.3d at 628-31 (determining that appellant falsely reported to police that he saw children playing in street unsupervised in an effort to humiliate the complainant).

For these reasons, we overrule appellant's sole issue. We affirm the trial court's judgment.


/s/    Kevin Jewell
        Justice

Panel consists of Justices Wise, Jewell, and Poissant.
Do Not Publish — Tex. R. App. P. 47.2(b).

7